UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY BELCASTRO,

    Plaintiff,

v.                                         Case No. 05-70570

BANK ONE, N.A.,                    HONORABLE AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND
THE PLEADINGS TO CONFORM TO THE PROOFS
AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

This is an employment case. Plaintiff Beverly Belcastro (Belcastro) is suing her former employer defendant Bank One, N.A. (Bank One)[1] asserting the following five claims: (1) workers' compensation retaliation, (2) a violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., (3) breach of employment contract, (4) age discrimination under Michigan's Elliot Larsen Civil Rights Act, M.C.L. § 37.2202(1)(a). and (5) intentional infliction of emotional distress.

Before the Court is Bank One's motion for summary judgment on all of Belcastro's claims and Belcastro's motion to amend the pleadings to add a claim of

---

[1]Bank One has undergone several name changes since Belcastro's hire and is now known as JPMorgan Chase Bank, N.A. For purposes of this case, however, the Court refers to defendant as Bank One.

1

reverse race discrimination. For the reasons that follow, Bank One's motion is GRANTED and Belcastro's motion is DENIED. This case is DISMISSED.

## II. Background

The material facts as gleaned from the parties' papers follow.[2]

Belcastro, who is Caucasian, was hired by Bank One in 1978 as a part time teller. Over the course of her employment, she held many positions including, teller, senior teller, general teller, customer service representative, assistant branch manager, and senior assistant manager. Her last promotion was on December 13, 1999 to Banking Center Manger at Bank One's Eastern Market branch. At the time of her promotion, Belcastro was directly supervised by Melanie Myers (Myers), who had supervised her for at least the past ten years. Myers reported to Mike Tyson (Tyson). Myers and Tyson apparently are African-American.

In late 2000, Belcastro requested and was granted a leave of absence from September 25, 2000 to November 6, 2000 due to stress.

On October 8, 2002, Belcastro requested another leave of absence apparently due to work-related stress. She states in her affidavit that on this day Tyson informed her that her office was a "pigsty" which "was the last straw and directly put me on work related stress leave due to his retaliation." Her leave was approved through the end of October. At that time, Bank One informed her that her leave time would run

---

[2]Bank One complied with the Court's motion practice guidelines for a motion for summary judgment. Belcastro did not. Not only was the Judge's copy provided to chambers missing three exhibits, one of which is Belcastro's entire deposition testimony, none of the exhibits were highlighted. Belcastro also did not file a counter-statement of disputed facts. She instead submitted an affidavit which as explained infra, contains statements which contradict her deposition testimony.

concurrently with her FMLA rights. Her leave was extended several times, first through November 15, 2002, then through December 10, 2002, then through December 20, 2002.

While on leave, on October 30, 2002, Belcastro told Myers that she was interested in moving to a different position. On December 4, 2002, Belcastro telephoned Myers and informed her that she would not return to work until January 2003. Myers also says that during that phone conversation, Belcastro requested that she be replaced at the Eastern Market branch; Belcastro denies making such a statement. Belcastro instead says that she was told by Myers that her job would remain open until her return from leave.

Myers replaced Belcastro with Novyce Harper, who is younger than her.

As of January 1, 2003, Belcastro had, according to Bank One's calculations, exhausted all of her FMLA leave. On January 16, 2003, Belcastro's physician released her to return to work on January 21, 2003 on a part time basis.

At some point in January 2003, Belcastro removed all of her personal belongings from her office. Also in January, Belcastro spoke with Myers about being temporarily assigned to work part time as a customer service representative as per her physician's instructions. At that time, Myers decided to place her at the Gratiot and Warren branch because there was a such a need at that location and the position would accommodate her medical restrictions. Belcastro, however, says that this assignment was done "to force her out" as that branch "was a known place to send employees for punishment" as it is a "dangerous" branch.

Belcastro never worked at this new position because on January 20, 2003 - the

3

day before she was to return to work - Belcastro met with her psychologist, Dr. Boardway, who recommended that she not return to work part time as planned and not return until "we explore other options for placement." Her physician, Dr. Fortune, concurred and again revised her return to work date from January 21, 2003 to February 4, 2003, the day before she was scheduled for surgery to remove a benign brain tumor.

Belcastro had the surgery on February 4, 2003 and Bank One extended her return to work date to April 8, 2003.

Belcastro was finally released to return to work as of May 5, 2003. In accordance with its policies, Bank One gave Belcastro 30 days from that date to apply for and secure a new position within the company. Belcastro applied for only one position - Banking Center Manager at a branch in Battle Creek. Belcastro applied on-line for the position on May 12, 2003. That position, however, was awarded to Darrell McLaughlin, an external candidate, the same day Belcastro applied.

On June 5, 2003, Belcastro was discharged from her employment after being unable to secure another position within 30 days of her return to work date.

Belcastro's last day of work with Bank One was October 8, 2002.

In 2003, Belcastro applied for social security benefits, and according to her, was awarded benefits in 2005 effective October 8, 2002. Information relating to Belcastro's social security case is not part of the record.

On September 26, 2003, months after her termination, Belcastro filed a workers compensation claim against Bank One.[3]

---

[3]The outcome of her workers compensation case is not part of the record.

B.

On November 30, 2004, Belcastro filed her complaint in state court. On February 11, 2005, Bank One removed the case to federal court on the basis of federal question jurisdiction. Belcastro's deposition was initially taken on September 6, 2005 and completed on December 12, 2005, after Bank One's receipt of Belcastro's medical records. On September 16, 2005, Belcastro filed a motion to remand, which was withdrawn on January 30, 2006. Discovery closed on December 12, 2005.

On January 13, 2006, Bank One filed for summary judgment. Belcastro filed a response on March 3, 2006.

On March 6, 2006, Belcastro filed a motion to amend the complaint to add a claim of race discrimination. On April 7, 2006, Bank One filed a response.

III. Legal Standards

A. Motion to Amend

Under Fed.R.Civ.P. 15(a), a party may amend their pleadings after 20 days "only by leave of court or by written consent of the adverse party; and leave to amend pleadings "shall be freely given when justice so requires." The decision whether or not to permit the amendment is committed to the discretion of the trial court. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-32 (1971); Estes v. Kentucky Util. Co., 636 F.2d 1131, 1133 (6th Cir. 1980). This discretion, however, is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." See Marks v. Shell Oil Co., 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted). In determining whether to permit amendment, some of the factors which may be considered by the district court are undue "delay in filing, lack

5

of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Hageman v. Signal L.P. Gas, Inc. 486 F.2d 479, 484 (6th Cir. 1973). See also Foman v. Davis, 371 U.S. 178, 182 (1962). Delay by itself is not sufficient to deny a motion to amend. Hagerman, 486 F.2d at 484. See also General Elec. Co. v. Sargent & Lundy 916 F.2d 1119, 1130 (6th Cir. 1990). Moreover, in denying a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986).

B.  Motion for Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for

summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### IV. Analysis

#### A. Motion to Amend

##### 1. Parties' arguments

Although the motion to amend was filed after the summary judgment motion, it is appropriate to first consider it. Belcastro says that during her deposition by Bank One "detailed rare [sic] discrimination and retaliation" evidence was revealed to Bank One. As such, Belcastro says that Bank One will not be prejudiced by allowing a race discrimination claim because "the facts and circumstances relating to race

discrimination have been exhaustively covered" during Belcastro's deposition. and that the subject of such discrimination was

Bank One says that amendment should not be allowed at this late stage in the case. Bank One also notes that Belcastro failed to comply with Fed. R. Civ. P. 15 by attaching a proposed amended complaint and it is therefore unclear whether she seeks to assert only a race discrimination claim or a race discrimination and retaliation claim, as both are mentioned in her motion. Bank One also points to Belcastro's deposition testimony where she states that race was not an issue, which contradicts statement in her affidavit.

## 2. Conclusion

Bank One's position is well-taken. Not only does Belcastro's request for amendment come late in the day - several months after the close of discovery and after her deposition was taken and after Bank One's summary judgment motion - she also fails to articulate precisely the nature of her claim. While she relies on her affidavit which set forth several allegations of reverse race discrimination by Tyson and Myers, who apparently are African-American, she does not proffer any admissible evidence in support of her allegations. Moreover, her statements are contradicted by her deposition testimony where she raised the issue of race discrimination but later backed off, stating "it's not a race issue for me...It's not a race issue. I just want to make that clear. It's not a race issue." (Belcastro Dep. at p. 45). She was also unable at deposition to provide any evidence of race discrimination, which belies the statement in her affidavit of a pattern and practice of discrimination against white managers. Under these circumstances, it would be prejudicial to Bank One to allow her to add a race

discrimination claim at this time. Belcastro had ample time after her deposition and prior to the close of discovery to develop the claim. She cannot rely on the conclusory statements in her affidavit to pursue a race discrimination claim at this stage of the case.

### B. Motion for Summary Judgment

Bank One says that all of Belcastro's claims fail. Each claim will be considered in turn.

#### 1. Workers Compensation Retaliation Claim

M.C.L. § 418.301(11) of the Michigan Compiled Laws provides:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

In order to establish a prima facie case of retaliatory discharge, Belcastro must prove that (1) she asserted her right to workers' compensation benefits; (2) Bank One knew that she asserted her right to workers' compensation benefits; (3) Bank One terminated Belcastro; and (4) there was a causal connection between the assertion of her right to workers' compensation benefits and her termination. Chiles v. Machine Shop, Inc., 606 N.W.2d 398 (Mich. Ct. App. 1999).

Bank One says that this claim fails because Belcastro was terminated before asserting any claim for workers compensation benefits. Belcastro does not directly respond to this argument and instead says that "upon return from leave [she] was demoted...criticized for her performance, and ... punished in the new assignment [the part time position at the Gratiot branch] given."

Bank One's position is well-taken. Belcastro, has not provided any evidence that Bank One's actions were taken in response to her filing a workers compensation claim. Indeed, she did not file the claim until several months after her termination. Thus, Belcastro cannot show that Bank One knew of the exercise of her workers compensation rights or that her termination was in any causally related to the exercise of those right. In short, there is no genuine issue of material fact. Under these circumstances, Bank One is entitled to summary judgment on this claim.

2.  FMLA Claim

Bank One says that Belcastro cannot prevail on this claim because she was not entitled to reinstatement after she exhausted twelve weeks of leave. Belcastro mentions this claim in the introduction section of her response but does not provide any argument in her brief to support the claim.

The FMLA provides that "a eligible employee shall be entitled to a total of 12 weeks of leave during any 12-month period" because of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). "Once an employee exceeds his twelve work weeks (or sixth work days) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA and termination of the employee will not violate the FMLA." Manns v. ArvinMeritor, Inc., 291 F. Supp. 2d 65, 660 (N.D. Ohio. 2003) (citing Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 784-85 (6th Cir. 1998)).

Here, Belcastro requested leave as of October 8, 2002. Under the FMLA, she had protected leave until January 1, 2003. Belcastro, however, was not cleared to return to work on a part time basis until January 21, 2003. She was unable to return to work that day and obtained another extension through February 4, 2003 and another

until May 5, 2003.  Belcastro admitted at deposition that as of January 21, 2003 she had been off work for more than 12 weeks.[4]  Because she was unable to return to work within 12 weeks, she forfeited her right to restoration of her employment under the FMLA.  See Cehrs, supra.  As such, Bank One is entitled to summary judgment on this claim.

### 3.  Breach of Contract Claim

Bank One says that Belcastro's claim for breach of employment contract fails because the company handbook is not a contract.  Belcastro makes no mention of this claim in her response.  In light of her non-response, and for the reasons that follow, Bank One is entitled to summary judgment.

In Michigan, employment contracts are presumed to be at will, terminable at the will of either party.  Rood v. General Dynamics Corp., 444 Mich. 107, 116 (1993).  In Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579 (1980) the Michigan Supreme Court articulated two exceptions to this rule: (1) the "contract theory" - where there is proof of a provision stating that just cause is necessary for termination, and (2) the "legitimate expectations theory" - where the employer's written policies or apparent practices instill "legitimate expectations" of just cause employment.  Belcastro cannot prevail under either theory.

As to the contract theory, Bank One's Personnel Policies Handbook clearly states:

---

[4]Belcastro states in her affidavit that she was "out a total of 53 days during my medically approved, work related leave in late 2002, early 2003."  This statement is simply untrue in light of the record and contradicts her testimony at deposition.

> This document is not a contract, plan or summary plan description, nor does it confer any contractual rights on employees. As always, employees of Bank One are employees at will; either Bank One or an employee can terminate employment at any time for any reason without notice.

Michigan courts have found such disclaimer language does not give rise to a breach of contract action or create a just cause employment relationship. See Scholtz v. Montgomery Ward & Co., 437 Mich. 83, 93 (1991); Rowe v. Montgomery Ward & Co., 437 Mich. 627, 646 (1991).

As to the legitimate expectations theory, Belcastro was unable at deposition to identify any policies or practices which created an expectation of just cause employment.

4. Age Discrimination Claim

Bank One says that this claim fails because she cannot establish that she was qualified for any position after her last day of work on October 8, 2002 and even if she could make such a showing, there is no evidence that her termination was age-related.

Michigan's Elliot Larsen Civil Rights Act (ELCRA) prohibits an employer from discharging an employee because of or age. See M.C.L. § 37.2202(1)(a). Claims under the Elliot-Larsen Act are generally subject to the same evidentiary burdens as claims for employment discrimination under the Age Discrimination in Employment Act. McDonald v. Union Camp Corp., 898 F.2d 1155, 1159 (6th Cir.1990).

The state and federal courts have recognized that an age discrimination claim can be established by presenting direct evidence of intentional discrimination, or by providing circumstantial evidence of disparate treatment on a discriminatory basis. See Mitchell v. Toledo Hosp., 964 F.2d 577, 582 n. 4 (6th Cir.1992) (holding that a prima

facie case of discrimination can be stated under the ADEA by presenting either direct evidence of intentional age discrimination or indirect evidence of disparate treatment on the basis of age, but finding no discrimination because the employer successfully presented a legitimate, nondiscriminatory and nonpretextual reason for the discharge)

Here, because Belcastro does not identify any direct evidence of discrimination, she appears to argue that she has made out an age discrimination claim based on disparate treatment. Under the guidelines established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) as adopted in Michigan, Belcastro must show that she was (1) a member of a protected class (between 40 and 70), (2) subject to an adverse employment action, (3) qualified for the position from which she was rejected or terminated, and (4) either replaced by a person from outside the protected class, or treated differently than a similarly situated employee from outside the protected class under circumstances that give rise to an inference of unlawful discrimination. See Mitchell, 964 F.2d at 582; Lytle v. Malady, 458 Mich. 153, 172-73 (1998). If she establishes a prima facie case, the burden of persuasion shifts to Bank One to present a legitimate non-discriminatory reason for the challenged employment decision. Should Bank One carry this burden of persuasion, then the burden returns to the Belcastro to prove by a preponderance of the evidence "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer" toward him. Lytle, 458 Mich. at 176.[5]

---

[5]Michigan law differs from federal law on the issue of pretext. Under federal law, pretext is established where a plaintiff shows the proffered reason is unworthy of belief. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147-48 (2000). Michigan, on the other hand, follows the "pretext plus" requirement which requires a showing that

Bank One says that Belcastro cannot make out a prima facie case because she admits she was unable to work and therefore not qualified for her position, or any position, at Bank One.  Bank One relies on Belcastro's application for social security benefits filed in February of 2003, her deposition testimony admitting that she was unable to work at the time of her application, and her deposition testimony admitting that she was disabled at the time of filing her workers compensation claim in September of 2003.  Bank One says that Belcastro is precluded from now arguing that she was qualified for the position.

Belcastro relies on her affidavit which she says establishes "direct and circumstantial facts" of age and race discrimination by Tyson and Myers.  She does not, however, address Bank One's argument as to whether she is qualified.

In Kerns v. Dura Mechanical Components, Inc., 242 Mich. App. 1 (2000), the Michigan Court of Appeals held that although judicial estoppel does not automatically bar a discrimination claim, statements made in a prior application for benefits, such as social security, may be relevant to a determination of whether a subsequent discrimination claim can stand in light of the inconsistent nature of asserting a disability preventing work and a discrimination claim an element of which requires an ability to work.  In Kerns, the court of appeals said that the inquiry is "[whether] looking at the previous facts and statements by a party, the assertions are such that the party cannot prove that he was a qualified individual because his previous statement take the position that he could not perform the essential functions of the job..."  242 Mich. App. at

---

the proffered reason was pretextual and that discrimination was a motivating factor in the decision.

11 (quoting Motley v. New Jersey State Police, 196 F.3d 160, 167 (3d Cir. 1999)). To avoid estoppel, a plaintiff must offer an explanation that is "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless perform [their job]..." Id. at 17.

Belcastro has not offered any explanation for the inconsistent position in her application for social security benefits and workers compensation benefits, both of which claimed disability, i.e. an inability to work, as of October 8, 2002. She offers no evidence that she is qualified for her position. As such, she cannot make out a prima facie case of age discrimination.

Even assuming Belcastro established a prima facie case, she provides no evidence that Bank One's reason for terminating her - the failure to secure another position within the company within 30 days of being released to return to work - was because of her age. Belcastro testified at deposition that it was her subjective belief that Tyson and Myers discriminated against her which forms the basis for her age discrimination claim, although she could not recall any reference they made regarding her age. Under these circumstances, Bank One is entitled to summary judgment on this claim.

5. Intentional Infliction of Emotional Distress Claim

Bank One says that it is entitled to summary judgment on this claim because she has no evidence to support it. Again, Belcastro's response fails to mention this claim.

In order to make out a claim for intentional infliction of emotional distress, Belcastro must show (1) extreme and outrageous conduct, (2) intent or recklessness,

(3) causation, and (4) severe emotional distress. Graham v. Ford, 237 Mich. App. 670, 674 (2000). Belcastro's deposition testimony falls short of this standard. She testified at deposition to being "degraded" by Tyson and "pushed to the curb" by Myers and various other actions by Tyson detailed in Bank One's brief, none of which rise to the level of extreme conduct necessary to maintain an emotional distress claim.

6.  Overall

Belcastro's response to Bank One's motion for summary judgment falls short. Her response does not address all of her claims nor respond to Bank One's arguments. Rather, her response appears to focus on the allegations of race discrimination set forth in her affidavit. As explained above, Belcastro cannot amend her complaint to assert such a claim at this late date and cannot rely on the conclusory statements in the affidavit to satisfy her summary judgment burden.

SO ORDERED.


Dated:  April 28, 2006            s/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 28, 2006, by electronic and/or ordinary mail.

                                   s/Julie Owens
                                  Case Manager
                                  (313) 234-5160